**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM P. YOUNG, | : | |
| | : | **Case No. 2:03-cv-655** |
| Plaintiff, | : | |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| LUMENIS, INC., | : | **Magistrate Judge Kemp** |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on Defendant's two motions for summary judgment. On August 19, 2005, Defendant filed a Motion for Summary Judgment on Plaintiff's Induced Infringement Claim ("Defendant's First Motion").  On January 9, 2006, Defendant filed a separate Motion for Summary Judgment, arguing Patent Unenforceability due to Plaintiff's Inequitable Conduct ("Defendant's Second Motion").  Plaintiff filed memoranda contra to both of Defendant's motions.  For the reasons stated herein, Defendant's First Motion is **GRANTED**, and Defendant's Second Motion is **GRANTED**.

### II.  FACTS AND PROCEDURAL HISTORY

Plaintiff, Dr. William P. Young, is a veterinarian who has obtained a patent for a cat declaw method using a laser.  On January 7, 2003, the United States Patent and Trademark Office ("PTO") awarded Plaintiff U.S. Patent No. 6,502,579 (the "'579 patent"), entitled "Laser Onychectomy by Resection of the Redundant Epithelium of the Ungual Crest."  According to Plaintiff, the patented procedure is unique because it leaves a substantial portion of tissue to cover the exposed tip of the second phalanx, thereby eliminating the need for surgical closure,

decreasing risk of infection and facilitating the healing process.

On July 23, 2003, Plaintiff filed a Complaint against Defendant, Lumenis, Inc. ("Lumenis"), alleging infringement of the '579 patent and seeking preliminary and permanent injunctions, damages, and attorney's fees.  Defendant is an international manufacturer, seller, and distributor of, among other things, surgical laser instruments, which may be used to perform Plaintiff's patented surgical procedure.  According to the Complaint, Defendant had been teaching veterinarians to perform the patented procedure in connection with its sales efforts.

In an Opinion and Order dated January 26, 2004, this Court granted Plaintiff's Motion for a Preliminary Injunction.  Finding that Defendant had not raised a substantial question as to the patent's validity and that Plaintiff had a reasonable likelihood of success on the merits of his infringement claim, the Court enjoined Defendant and anyone acting in concert with Defendant from teaching, performing, or practicing the patented procedure and from distributing any materials that teach or illustrate the procedure.

On October 19, 2004, after it held a bench trial on Plaintiff's alleged inequitable conduct before the PTO, the Court found that neither Plaintiff nor his attorney, Jason Foster, engaged in any such conduct.

The parties then filed briefs for a *Markman* hearing, which this Court held on March 1, 2005.  After the hearing, the court found that five of the six claims in the '579 patent were invalid for indefiniteness.  The Court ruled that Claim 1 was invalid because Defendant proved by clear and convincing evidence that it would be impossible for someone skilled in the art to determine the meaning of the term "near" as used in Step (a) of Claim 1, and thus avoid infringement.  Because Claims 2 through 5 are dependent on Claim 1, the Court found them similarly invalid for indefiniteness.  After the *Markman* hearing, only Claim 6 of the '579 patent stands.

On August 19, 2005, Defendant filed Defendant's First Motion, and on January 9, 2006,

Defendant filed Defendant's Second Motion.  Plaintiff filed memoranda contra to both of

Defendant's motions, and Defendant filed reply memoranda.  Accordingly, Defendant's First

Motion and Defendant's Second Motion are both ripe for disposition.

### III.  STANDARD OF REVIEW

As a threshold matter, "[s]ummary judgment is as appropriate in a patent case as in any

other civil action."  *Desper Products, Inc. v. Spatializer Audio Laboratories, Inc.*, 157 F.3d

1325, 1332 (Fed. Cir. 1998); *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d

670, 672 (Fed. Cir. 1990).

Generally, summary judgment is appropriate "[i]f the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(c).  The movant has the burden of establishing that there are no genuine

issues of material fact, which may be accomplished by demonstrating that the non-moving party

lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986).  The non-moving party must then point to an evidentiary conflict created on

the record by at least submitting a counter statement of a fact or facts set forth in detail in an

affidavit by a knowledgeable affiant.  *Barmag Barmer Maschinenfabrik Ag. v. Murata*

*Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

In evaluating a motion for summary judgment, the evidence must be viewed in the light

most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The Court also must interpret all reasonable inferences in the non-movant's favor.  *United States*

*v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Netscape Communications Corp. v. Konrad*, 295 F.3d

1315, 1319 (Fed. Cir. 2002); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

150 (2000) (stating that the court must draw all reasonable inferences in favor of the non-moving

party and must refrain from making credibility determinations or weighing the evidence). The

existence of a mere scintilla of evidence in support of the non-moving party's position will not

be sufficient; there must be evidence from which the jury reasonably could find for the non-

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *see also Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding summary judgment

appropriate when "the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party").

## IV. ANALYSIS

### A. Defendant's First Motion (Induced Infringement)

In Defendant's First Motion, it alleges that Plaintiff cannot prove that Defendant ever

induced infringement of Claim 6 of the '579 patent, and therefore, Defendant is entitled to

summary judgment on that issue. Title 35 U.S.C. § 271(b) provides that "[w]hoever actively

induces infringement of a patent shall be liable as an infringer." To prove inducement, a plaintiff

must prove two elements: (1) that the defendant intended for his actions to induce actual

infringement; and (2) that a third party directly infringed. *Alloc, Inc. v. Int'l Trade Comm'n*, 342

F.3d 1361 (Fed. Cir. 2003); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed Cir.

2003); *see also C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed.

Cir. 1990) ("A person *induces* infringement under 271(b) by actively and knowingly aiding and

abetting another's direct infringement.") (emphasis in original).

The level of intent a plaintiff must prove in an induced infringement claim is relatively

high. The fact that a defendant has "knowledge of the acts alleged to constitute infringement" is

not enough. *Warner-Lambert*, 316 F.3d at 1363 (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed Cir. 1990)). Rather, "proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Id*. (quoting *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)). Direct evidence of actual intent, however, is not necessary; circumstantial evidence may suffice. *Id*. (citing *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed Cir. 1998)).

As to the second element, a plaintiff must show evidence that the defendant's actions caused direct infringement by a third party. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004); *see also Zenith Laboratories, Inc. v. Bristol-Meyers Squibb Co.*, 19 F.3d 1418, 1423 n.5 (Fed. Cir. 1994) ("A finding that a claim is infringed is a necessary prerequisite to a finding that there has been an act constituting inducement to infringe under § 271(b)."); *Cannon Group, Inc. v. Better Bags, Inc.*, 250 F.Supp.2d 893, 906 (S.D. Ohio 2003) (Marbley, J.) ("[I]nducement to infringe a patent require[s] that someone directly infringe the patent.").

Defendant argues that Plaintiff cannot show any evidence that Defendant possessed the requisite intent to induce infringement of the '579 patent or that there was direct infringement by an unauthorized third party. Accordingly, Defendant seeks summary judgment on Plaintiff's induced infringement claims.

Since the Court has previously invalidated Claims 1 through 5 of the '579 patent,[1] the only claim at issue here is Claim 6, which reads:

A feline onychectomy surgical method using a laser cutting instrument, the method comprising:

---

[1]*See Order Regarding Markman Hearing*, No. 03-655 (S.D. Ohio Nov. 1, 2005).

(a)     forming a first circumferential incision with the laser in the epidermis at the edge of the ungual crest of the feline's claw, thereby severing at least some of the epidermis from the ungual crest; and then

(b)     applying cranial traction to the epidermis severed from the ungual crest to displace the distal edge of the epidermis cranially; and then

(c)     Forming a second circumferential incision in the epidermis about 3 millimeters cranial to the first circumferential incision, thereby severing at least some of the subcutaneous fascia from the ungual crest; and then

(d)     Incising the extensor tendon near its insertion on the ungual crest by directing the laser beam in a substantially palmar direction from a laser beam source positioned substantially dorsally of the extensor tendon; and then

(e)     incising the synovium of the PII-PIII joint; and then

(f)     applying traction to the claw in the palmar direction for disarticulating the PII-PIII joint; and then

(g)     ablating the medial and lateral collateral ligaments by directing the laser beam in a substantially palmar direction from the source positioned substantially dorsally of the ligaments; and then

(h)     incising the digital flexor tendon by directing the laser beam in a substantially palmar direction from the source positioned substantially dorsally of the flexor tendon; and then

(i)     incising the subcutaneous tissues of the pad of the second phalanx by directing the laser beam in a substantially palmar direction from the source positioned substantially dorsally of the flexor tendon; and then

(j)     applying palmar traction to the epidermis severed from the ungual crest for covering the onychectomy site.

To survive Defendant's motion for summary judgment, Plaintiff must demonstrate: (1) that

Defendant intended for his actions to induce a third party to perform the ten-step procedure set

forth in Claim 6 of the '579 patent; and (2) that Defendant's actions did in fact induce a third party to perform that ten-step procedure.[2]

### 1. Induced Infringement Based Upon Arza's Conduct

Defendant employed Dr. Reinaldo A. Arza ("Arza") as a sales representative from February 2002 until December 2003.  In connection with his sales efforts, Arza sometimes would instruct veterinarians on how they might use the laser, demonstrating several different procedures.  The potential customers then would perform the different procedures according to Arza's instruction.  On occasion, Arza would demonstrate a cat declaw procedure, which Plaintiff alleges amounts to induced infringement of the '579 patent.  Defendant counters that there is no evidence that Arza ever taught the specific ten-step procedure described in Claim 6, so it is entitled to summary judgment on this issue.

Plaintiff indicates that he can prove Arza's intent to induce infringement and direct infringement through Arza's own deposition testimony.  When questioned about the procedures he taught to veterinarians during sales calls, referred to as "demonstrations," and installations of lasers he had already sold, referred to as "in-services," Arza testified as follows:

> "Q:    I see.  Okay.  What about an in-service or a demonstration?  Did you ever give an in-service or a demonstration in any time frame of a declaw procedure?
>
> A:    Yes.

---

[2]The Court disagrees with Plaintiff to the extent he argues Defendant has induced infringement simply by selling its laser products.  Selling a device capable of infringement, without more, is not inducement.  *Dynacore Holdings Corp.*, 363 F.3d at 1276 n.6; *see also Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774–75 (Fed. Cir. 1993) ("a method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method.  The sale of the apparatus is not a sale of the method.  The method claim is directly infringed only by one practicing the patented method.").  In this case, Plaintiff may not base any claim of infringement solely on Defendant's manufacture and sale of surgical lasers, even though those lasers are capable of performing the ten-step method in Claim 6 of the '579 patent.

Q:      Okay.  And would the veterinarian or the person to whom you taught the declaw procedure then perform the declaw procedure?

A:      Yes.

Q:      And then, assuming since it's a small number of people, did you watch how they performed the procedure?

A:      Yes.

Q:      Okay.  And did they perform the procedure as you taught them to do it?

A:      That's the -- That's the -- That's the objective.

Q:      That's the objective.  So -- so when your objective was met, you could leave and -- and -- and go --

A:      Well, when the -- when the procedure was done --

Q:      Yeah.

A:      I could leave whether it was met or not.

Q:      Yeah.  Okay.  But -- But just in particular, you -- you have taught the declaw procedures in either installations or demonstrations; and the veterinarian then performed it as you taught it.  Is that correct?

        [Objection omitted]

A:      Then the veterinarian performed it.

Q:      That's right.  And -- And -- And I take it if the veterinarian performed it in a way that you thought was incorrect, you would point that out to the veterinarian?

A:      That is correct."

Plaintiff asserts that this excerpt from Arza's deposition testimony evidences his intent to teach a cat declaw procedure so that the veterinarian he taught would perform it.  Furthermore, once the veterinarian performed the procedure Arza taught, the veterinarian committed direct infringement.  Thus, according to Plaintiff, he can meet both elements of his induced infringement claim based upon Arza's conduct during demonstrations and in-services.[3]

The problem with Plaintiff's above analysis is that the selected deposition testimony does not address Arza's intent to induce infringement, or establish any direct infringement, of Claim

---

[3]The only evidence Plaintiff uses to support this claim of induced infringement is Arza's deposition testimony.  Notably, Plaintiff has not identified any direct infringer who Arza has allegedly induced.

6, specifically.  Claims 1 through 5 of the '579 patent have been invalidated by this Court's previous Order, and only Claim 6 stands.  The aforementioned deposition testimony does not set out the steps, one by one, that Arza taught during demonstrations and in-services.  As long as Arza did not teach the ten-step method provided in Claim 6, then neither Arza nor Defendant induced infringement of the '579 patent.  The deposition testimony Plaintiff cites does not, by itself, show that Arza induced infringement of Claim 6, the only remaining Claim of the '579 patent.

In fact, Arza specifically testified during his deposition that he did not teach anyone the steps in Claim 6.  During his first deposition, Arza testified to the following:

"Q: Okay.  Okay.  Yes.  Did you ever teach a second incision through the tissue of the P3 that was proximal to the first incision [as described in step 6(c)]?

A: Say that again.  A second incision -- I'm trying to follow what you're--

Q: I understand.

A: -- what you're trying to describe --

Q: I'm not sure I can --

A: -- so I can -- so I can answer properly.

Q: A second incision to the tissue covering P3 that was proximal to the first incision.

A: No.

Q: You've never taught that?

A: No, not --

[Objection omitted]

A: -- not -- no, not to my recollection.

Q: Did you ever perform a second incision of -- of the type I just described?

A: I don't know.  I mean not by intention.  Not -- Not in -- Not by intention.

Q: Not deliberately?

A: No.  Well, if my first incision is not deep enough, then obviously I would have to make a second incision.

Q: Okay.

A: You know, but not intentionally making first incision, second incision, no."

Later during his deposition, when discussing the procedure he taught to veterinarians, Arza

testified as follows:

> "Q:    Okay.  Let's go to [Claim 6] (c)?
>
> A:     'Forming a second circumferential incision in the epidermis about three
>        millimeters cranial to the first circumferential incision, thereby severing at least
>        some of the subcutaneous fascia from the ungual crest; and then.'  And this,
>        again, is a step that I typically do not intend to do and only do I do that if my first
>        circumferential incision did not go deep enough to accomplish the procedure."

Plaintiff, in his Memorandum Contra, concedes that "Dr. Arza testified recently that he had not

taught a second incision as recited in claims 3, 4, and 6."[4]  Because Arza's deposition testimony

does not indicate that he taught veterinarians the ten-step method described in Claim 6 of the

'579 patent, Plaintiff has not provided sufficient evidence to show that Arza intended to induce

infringement.  Additionally, Plaintiff fails to submit any evidence that there was direct

infringement of the '579 patent due to Arza's demonstrations or in-services.  Therefore,

Defendant's First Motion, based upon Arza's conduct, is **GRANTED**.

## 2. Induced Infringement Based Upon Book Distribution

After filing his provisional patent application, Plaintiff delivered a lecture on the

procedure and prepared and published a technical paper describing the procedure.  An overview

of Plaintiff's paper was published in the May 2002 thirteen-chapter book entitled *The Veterinary

Clinics of North America Small Animal Practice*, edited by Dr. Kenneth E. Bartels (the "Bartels

book").  The Bartels book, which focuses on "Lasers in Medicine and Surgery," describes and

explains various uses of surgical lasers in veterinary medicine.  Plaintiff's paper appears within

Chapter 6 of the Bartels book.

---

[4]Pl.'s Mem. Opp'n to Def.'s First Motion at 6 n. 14.

Plaintiff alleges that in May 2003, one of his colleagues who attended a Lumenis-sponsored conference in Columbus, Ohio, received a copy of the Bartels book.  Furthermore, Arza testified during his deposition that he distributes copies of the Bartels book and that Lumenis provided him with these books.  Plaintiff bases one of its induced infringement claims on Defendant's distribution of the Bartels book in connection with selling its surgical lasers.

Defendant seeks summary judgment on this claim, arguing that Plaintiff lacks evidence to prove that Defendant had the requisite intent or that its distribution of the Bartels book caused direct infringement of the '579 patent.  In its Memorandum Contra, Plaintiff concedes that he lacks evidence on the essential elements of this claim, but urges this Court to deny Defendant's motion on this issue pursuant to Rule 56(f) of the Federal Rules of Civil Procedure because Defendant allegedly withheld certain discovery.

a. Requisite Intent

Plaintiff has not proven that Defendant actually intended to cause the acts which would constitute the infringement of the '579 patent when Defendant distributed the Bartels book to customers.  A plaintiff must show that the defendant promoted or encouraged a third party to infringe a method patent to survive summary judgment.  *See Warner-Lambert*, 316 F.3d at 1364. On this issue, Plaintiff primarily bases his allegation of induced infringement upon the following deposition testimony of Arza:

> "Q:   When you distribute those [Bartels] books, do you -- describe the circumstances surrounding how you might distribute one of those books.
>
> A:    The circumstances would go like this: I would simply ask: Are you familiar with the -- of course, all veterinarians are familiar with the Veterinary Clinics of North America.  I simply ask: Do you have the May 2002 issue of Veterinary Clinics of North America, which talks about lasers used in veterinary medicine?  If the answer is no, then I say, 'Well, here take this one; its got some good information in there for you.'"

The foregoing testimony, by itself, is not enough to constitute the level of intent necessary to satisfy the first element of an induced infringement claim.

Moreover, Plaintiff has not proven that Defendant, or any of Defendant's employees, ever read Chapter 6 of the Bartels book themselves.  Without proof that Defendant read Chapter 6 of the Bartels book before giving the book to its customers, this Court finds it difficult to believe that Defendant could have promoted or encouraged the book recipients to infringe the '579 patent.  Therefore, Plaintiff has not submitted sufficient evidence to meet the first element of his induced infringement claim based upon Defendant's distribution of the Bartels book.

### b.  Direct Infringement

Likewise, Plaintiff has failed to prove that any person to whom Defendant distributed the Bartels book directly infringed Claim 6 of the '579 patent.  Without proof that some third party directly infringed the '579 patent as a result of Defendant's distribution of the Bartels book, Plaintiff's claim of induced infringement fails.

### c.  Rule 56(f)

Plaintiff asks this Court to deny Defendant's First Motion on this issue by invoking Rule 56(f) of the Federal Rules of Civil Procedure.  Rule 56(f) provides the following:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f).  To invoke Rule 56(f), a party must indicate to the district court its need for additional discovery, what material facts it hopes to uncover, and why it has not previously

discovered the information.  *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004)

(quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)).

In this case, Plaintiff alleges that he cannot adequately respond to Defendant's First

Motion regarding Defendant's distribution of the Bartels book because he first needs to obtain

from Defendant (1) the identity of persons to whom Defendant distributed the Bartels book and

(2) Defendant's sales representatives' calendars.  In its Reply Memorandum, Defendant asserts

that it does not maintain a record of Bartels book recipients, and that it has previously explained

to Plaintiff that no such record exists.  Defendant further contends that it had disclosed its sales

representatives' calendars, with the exception of Arza's calendar, to Plaintiff almost two years

ago.  Defendant alleges that Plaintiff's request for protection under Rule 56(f) is merely an

attempt to stall the litigation.

At any rate, the Court denies Plaintiff's request under Rule 56(f) because the documents

he seeks from Defendant are irrelevant.  First, Defendant has explained to Plaintiff that a list of

Bartels book recipients does not exist.  Defendant has already disclosed to Plaintiff its customer

list, which it insists is the most responsive document to Plaintiff's request.  Second, the sales

representatives' calendars provide nothing more than the dates upon which those representatives

met with potential customers.  Neither of the documents Plaintiff seeks here is probative of

Defendant's intent to induce infringement of Claim 6 of the '579 patent or of any third-party

direct infringement.  As such, Plaintiff's request under Rule 56(f) is denied.  Furthermore, since

Plaintiff has failed to prove the essential elements of his induced infringement claim based upon

Defendant's distribution of the Bartles book, Defendant's First Motion, with respect to that

claim, is **GRANTED**.

### 3.  Induced Infringement Based Upon Web Site

13

Sometime after obtaining the '579 patent, Plaintiff visited a website, www.laserles.com, where he obtained detailed instructional materials that relate to the patented procedure.  The website is operated by Les Lattin ("Lattin"), one of Defendant's independent sales representatives.  Defendant's AccuVet trademark is prominently featured on Lattin's website.  Plaintiff bases one of its induced infringement claims on the information Plaintiff retrieved from this website.

Defendant, in its motion for summary judgment, first argues that because Lattin is an independent contractor over whom Defendant has no control, Defendant cannot be held vicariously liable for Lattin's website content.  Defendant then contends that Plaintiff has not pointed to any evidence that Defendant intended anyone to perform the allegedly infringing acts after viewing the material on Lattin's website.  Finally, Defendant asserts that there is no evidence that anyone ever accessed the allegedly infringing content or that anyone ever performed the infringing acts after viewing the web posting.

In its Memorandum Contra to Defendant's First Motion, Plaintiff did not respond to any of Defendant's arguments involving Lattin's website.  At oral argument, Plaintiff conceded the he had no evidence to support a valid claim of induced infringement based upon Lattin's website.  Because Plaintiff has failed to make any showing of the essential elements of his induced infringement claim with respect to Lattin's website, Defendant's First Motion as to that claim is **GRANTED**.

<u>4.  Induced Infringement Based Upon Wertheim's Conduct</u>

Another of Plaintiff's induced infringement claims relates to the conduct of Darren

Wertheim ("Wertheim"), one of Defendant's independent sales representatives.[5]  Specifically,
Plaintiff asked Dr. John H. Carr ("Carr"), one of Plaintiff's colleagues, to contact Defendant and
to schedule a demonstration of the surgical laser Defendant sells.  On June 30, 2003, Wertheim
conducted the sales demonstration, and both Plaintiff and Carr attended.  During Wertheim's
demonstration, which was videotaped, he performed a feline declaw procedure using
Defendant's laser.  Wertheim then encouraged Carr to perform the procedure.  Plaintiff alleges
that Wertheim's conduct during the demonstration induced infringement of the '579 patent.

In Defendant's First Motion, it argues that Plaintiff cannot prove that Wertheim taught
Carr the ten-step procedure provided in Claim 6 of the '579 patent.  Additionally, it argues that
because Carr had Plaintiff's permission to participate in Wertheim's demonstration, Plaintiff
granted Carr an implied license to perform the steps he carried out during that demonstration and
thus, Carr could not directly infringe the '579 patent.  To prove Plaintiff granted an implied
license to Carr, Defendant indicates that Plaintiff asked Carr to set up the demonstration, paid
him for his services, and had him participate in a videotape of the meeting.  According to
Defendant, since Carr could not be a direct infringer as Plaintiff's licensee, then Plaintiff's claim
of induced infringement based upon Wertheim's conduct fails.

a.  Requisite Intent

Defendant does not address whether Wertheim possessed the requisite intent to meet the

---

[5]In his Memorandum Contra, Plaintiff alleges that he can hold Defendant vicariously
liable for Wertheim's conduct because Wertheim had apparent agency authority by virtue of his
representations to Plaintiff and Dr. John H. Carr.  Defendant does not dispute Wertheim's agency
authority in its Reply Memorandum, so the Court does not address the agency issue in this
Opinion.

first element of induced infringement.  Rather, Defendant's argument as to this claim is restricted to whether there was any direct infringement.

### b.  Direct Infringement

Defendant contends that, before filing his Memorandum Contra to Defendant's First Motion, Plaintiff had never alleged that Carr actually performed the ten-step procedure set out in Claim 6.  According to Defendant, Plaintiff alleged that, during Wertheim's demonstration, Defendant induced infringement as to Claims 1 through 4 only.  Likewise, Plaintiff's response to Defendant's Interrogatory 1, which asks him to state with particularity his infringement contention, indicates that Plaintiff relied upon the Wertheim demonstration for Claims 1-4, but not for Claims 5 or 6. At oral argument, Plaintiff admitted that he has no evidence that Wertheim taught Carr the ten-step procedure in Claim 6.  After it considers Plaintiff's recent concession, the Court finds Plaintiff's allegation of induced infringement based upon Wertheim's conduct insufficient to survive summary judgment.  Therefore, Defendant's First Motion, with respect to this claim, is **GRANTED**.[6]

### B.  Defendant's Second Motion (Inequitable Conduct)

### 1.  Whether Defendant's Second Motion is Before The Court Properly

Before it addresses the merits of Defendant's Second Motion, this Court must determine whether that motion is before the Court properly.  During oral argument on Defendant's two motions for summary judgment, Plaintiff asserted that the Court could not decide the issue of Plaintiff's alleged inequitable conduct because Defendant did not assert that claim in its

---

[6]Because it finds that Plaintiff has provided insufficient evidence to meet its burden of proof on this issue, and that Defendant is entitled to judgment as a matter of law on that basis, this Court need not address Defendant's implied license theory.

pleadings, in accordance with Rules 8(c)[7] and 9(b)[8] of the Federal Rules of Civil Procedure

("Rule 8(c)" and "Rule 9(b)," respectively).[9]  Defendant responded by moving the Court to

amend its pleadings pursuant to Rule 15(b) of the Federal Rules of Civil Procedure.[10]  After oral

argument on Defendant's motions for summary judgment, the Court ordered the parties to submit

briefs on the issue of whether Defendant's Second Motion is before the Court properly.

   Both parties agree that Defendant's inequitable conduct claim at issue is an affirmative

defense that is subject to Rule 8(c) and Rule 9(b).  *See* FED. R. CIV. P. 8(c), 9(b); *see also*

---

[7]Rule 8(c), in pertinent part, states the following: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . fraud . . . and any other matter constituting an avoidance or affirmative defense."  FED. R. CIV. P. 8(c).

[8]Rule 9(b), in relevant part, provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).

[9]Plaintiff, in his brief on this issue, maintains that he does not claim Defendant violated Rule 8, but rather that Defendant violated Rule 9(b) when it moved for summary judgment on Plaintiff's alleged inequitable conduct before asserting that claim in its pleadings.  As a legal matter, however, this Court cannot address Plaintiff's Rule 9(b) argument without first analyzing Rule 8(c) because Rule 8(c) buttresses Rule 9(b).

In addition, Plaintiff's argument here is twofold: first, he alleges that the Court cannot hear Defendant's Second Motion because Defendant did not include that allegation in its pleadings; second, he alleges that the Court cannot hear Defendant's Second Motion because Defendant did not plead Plaintiff's alleged inequitable conduct with the requisite particularity. Therefore, the Court must interpret Rule 8(c) to resolve Plaintiff's first argument, and it must interpret Rule 9(b) to resolve Plaintiff's second argument.

[10]Rule 15(b), in relevant part, provides the following:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Fed R. Civ. P. 15(b).

*Cabinet Vision v. Cabinetware*, 129 F.3d 595, 600 n.4 (Fed. Cir. 1997).  In the Sixth Circuit,[11] a party's failure to raise an affirmative defense by responsive pleading does not necessarily prevent that party from asserting such defense.  *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993); *see also Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) (finding that the purpose of pleading an affirmative defense under Rule 8(c) is to give the opposing party notice of the defense and an opportunity to respond to it).  "[I]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" *Moore*, 992 F.2d at 1445 (citing *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989).

In this case, Defendant gave Plaintiff notice of its affirmative defense when it filed Defendant's Second Motion on January 9, 2006.  Pursuant to this District's Local Civil Rules, Plaintiff was not required to respond to Defendant's Second Motion until January 30, 2006, and Plaintiff did in fact file an opposing memorandum on that date.  *See* S.D. Oʜ Cɪᴠ. R. 7.2(a)(2).  In its opposing memorandum, however, Plaintiff never asserted that Defendant's Second Motion was before the Court improperly due to a procedural defect; rather, Plaintiff argued the merits of Defendant's Second Motion.[12]  Despite Plaintiff's recent objection to Defendant's Second

_____

[11]The Sixth Circuit controls on this issue because it is procedural and is not unique to patent law.  *See Molins PLC v. Quigg*, 837 F.2d 1064, 1066 (Fed. Cir. 1988).

[12]Defendant alternatively contends that this Court may consider Defendant's Second Motion because when Plaintiff filed its opposing memorandum, Defendant's answer was "constructively amended" to include the inequitable conduct claim.  Plaintiff responds that Defendant cannot prevail under this argument because Sixth Circuit precedent does not authorize constructive amendment.
When both parties squarely address an unpled claim in their summary judgment briefs, the pleadings may be constructively amended to include that claim.  *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998); *Walton v. Jennings Cmty. Hosp.*, 875 F.2d 1317, 1320 (7th Cir. 1989); *accord Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992) ("When parties fully litigate an issue they obviously have notice of the issue and have been given an opportunity to respond."); *Hasselbrink v. Speelman*, 246 F.2d 34, 38–39 (6th Cir. 1957) ("[I]t is

18

Motion under Rule 9(b),[13] Plaintiff had adequate notice of Defendant's allegations and he had an

opportunity to respond to them in his opposing memorandum and at oral argument.  Under

*Moore*, Defendant's failure to comply with Rule 8(c), by itself, does not cause Plaintiff any

prejudice.[14]  *See* 992 F.2d at 1145.  Accordingly, this Court may render a decision on

Defendant's Second Motion because it is before the Court properly.[15]

_____

the rule that when issues not raised by the pleadings are tried by express or implied consent of
the parties, they shall be treated in all respects as if they had been raised in the pleadings.").
This Court finds these decisions persuasive.  When Plaintiff responded to Defendant's Second
Motion in its opposing memorandum without raising any objection, Plaintiff impliedly consented
to litigate the issue of his alleged inequitable conduct before the PTO.  Thus, the Court may
constructively amend the pleadings in this case to include that claim.

     [13]Plaintiff waited until oral argument on Defendant's Second Motion to contest that
motion on the basis of Rule 9(b).  The Court rejects Plaintiff's argument.  Plaintiff contends that
Defendant's Second Motion does not to afford Plaintiff adequate notice because it fails to plead
Plaintiff's alleged inequitable conduct with sufficient particularity.  Specifically, Plaintiff argues
that Defendant, in its motion, identified the governing rule upon which its argument relies, 37
C.F.R. § 1.555, but it did not identify the specific subsection of that rule, 37 C.F.R. §
1.555(b)(2).
     Plaintiff's argument fails for two reasons: first, Defendant's citation to 37 C.F.R. § 1.555
in its motion was particular enough to explain the grounds of Defendant's essential claim;
second, Rule 9(b) merely requires a party to plead facts, not the law, with particularity.  *See* Fed.
R. Civ. P. 9(b) ("In all averments of fraud or mistake, *the circumstances constituting fraud* or
mistake shall be stated with particularity.") (emphasis added); *see also Michaels Bldg. Co. v.
Ameritrust Co. N.A.*, 848 F.2d 674, 677–78 (6th Cir. 1988) (noting that a party must plead its
factual basis for believing that a fraud has occurred under Rule 9(b)).  Defendant's Second
Motion states a particular factual basis to give Plaintiff notice regarding Defendant's inequitable
conduct allegation.  Therefore, Rule 9(b) does not prevent this Court from deciding Defendant's
Second Motion.

     [14]Plaintiff claims he would be prejudiced if the Court decides Defendant's Second
Motion now because if the Court grants summary judgment on that motion, then the '579 patent
could be held unenforceable.  Plaintiff, however, misunderstands the concept of prejudice.
"Unfair prejudice means the undue tendency to suggest a decision based on improper
considerations; it does not mean the damage to a [party's] case that results from the legitimate
probative force of the evidence."  *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 515 (6th Cir.
1996).  Thus, the fact that Plaintiff's patent might be held unenforceable does not constitute
prejudice.

     [15]Because the Court finds that Defendant amended its pleadings when it filed Defendant's
Second Motion and put Plaintiff on notice of the inequitable conduct claim, this Opinion need

2.  The Court's Decision on Defendant's Second Motion

In Defendant's Second Motion, it alleges that the '579 patent is unenforceable in its entirety due to Plaintiff's inequitable conduct during reexamination proceedings before the PTO. On September 16, 2005, the PTO rejected Claims 1 and 2 of the '579 patent based upon prior art.[16]  Pursuant to 35 U.S.C. § 302,[17] Plaintiff filed a request for reexamination by the PTO of the rejected Claims, which the PTO granted.  On October 24, 2005, Plaintiff allegedly had an interview with the patent examiner (the "Examiner"), but Plaintiff never filed the required interview summary of that meeting.[18]  On October 26, 2005, Plaintiff submitted a written argument to the Examiner, stating the reasons he contended the PTO's decision to reject Claims 1 and 2 was incorrect.  According to Defendant, Plaintiff engaged in inequitable conduct because he violated his duty of candor and good faith in dealing with the PTO in the following ways: (1) by failing to disclose to the Examiner Hedlund's deposition testimony for this litigation[19]; and

---

not address Defendant's request for leave to supplement its answer and counterclaims pursuant to Rule 15 of the Federal Rules of Civil Procedure.

[16]The PTO rejected Claims 1 and 2 based largely upon Chapter 6 of a 1997 veterinary textbook edited by Professor Theresa Fossum (referred to as the "Fossum reference").  The chapter at issue, which describes a cat declawing procedure, was authored by Professor Cheryl Hedlund ("Hedlund").  The PTO found that the only significant difference between Hedlund's technique and the '579 patent is that Hedlund's technique uses a scalpel for the procedure as opposed to a surgical laser.

[17]Section 302 provides, "Any person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art cited under the provisions of section 301 of this title . . . ."  35 U.S.C. § 302.

[18]37 C.F.R. § 1.560(b), entitled "Interview in ex parte reexamination proceedings," provides that "[i]n every instance of an interview with an examiner in an ex parte reexamination proceeding, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the patent owner."

[19]Plaintiff argues that this issue is mooted because he submitted the Hedlund deposition to the Examiner on the same day he filed his Memorandum Contra, January 30, 2006.  The Court disagrees.  If the Court finds his conduct before the PTO inequitable, Plaintiff's recent

(2) by making factually false statements that are inconsistent with Hedlund's deposition testimony.

a.  Materiality and Intent[20]

To prove inequitable conduct in a reexamination proceeding before the PTO, the party alleging inequitable conduct must provide evidence of "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed. Cir. 2003) (quoting *Purdue Pharma L.P. v. Boehringer Ingelheim*

_____

submission does not cure his misconduct.  As an initial matter, Plaintiff did not provide the updated information to the PTO until Defendant filed this motion.  *See Rohm and Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983) (holding that one who commits inequitable conduct before the PTO may cure his wrongdoing if he "chooses to take the necessary action on his own initiative").

Additionally, one who seeks to remedy his inequitable conduct before the PTO must prove "by clear, unequivocal, and convincing evidence" that he has performed the following three steps:

> The first step to be met by an applicant, aware of misrepresentation in the prosecution of his application and desiring to overcome it, is that he expressly advise the PTO of its existence, stating specifically wherein it resides.  The second requirement is that, if the misrepresentation is of one or more facts, the PTO be advised what the actual facts are, the applicant making it clear that further examination in light thereof may be required if any PTO action has been based on the misrepresentation.  Finally, on the basis of the new and factually accurate record, the applicant must establish patentability of the claimed subject matter.

*Id*.  Here, Plaintiff has not proven by clear, unequivocal and convincing evidence that he has taken these steps.  Therefore, if the Court finds inequitable conduct here, Plaintiff's misdeeds are not cured simply because of his recent disclosure of the Hedlund deposition to the PTO.

[20]The law of inequitable conduct has been discussed in a previous Opinion and Order in this case.  *See Order Regarding Inequitable Conduct*, No. 03-655 (S.D. Ohio Oct. 19, 2004).  For simplicity, the Court will adopt, with only minor adjustments, the discussion of materiality and intent set out in that Opinion.

*GMBH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001)).  "Both intent and materiality are questions of

fact that must be proven by clear and convincing evidence."  *Dayco*, 329 F.3d at 1362; *see*

*Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004) (noting that a

court may only find a patent unenforceable based upon inequitable conduct if it finds, by clear

and convincing evidence, "that the applicant omitted or misrepresented material facts with the

intention of misleading or deceiving the patent examiner"); *Semiconductor Energy Lab. Co. v.*

*Samsung Elecs. Co.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000) (stating that alleged infringer "must

demonstrate by clear and convincing evidence both that the information was material and that

the conduct was intended to deceive").

     The court first must determine whether the withheld references or misrepresentations

satisfy a threshold level of materiality and whether the applicant's conduct satisfies a threshold

showing of intent to deceive.  *Semiconductor*, 204 F.3d at 1373; *Baxter Int'l, Inc. v. McGaw,*

*Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998).  Once the threshold levels of materiality and intent

have been established, the court must weigh materiality and intent to determine whether the

equities warrant the conclusion that inequitable conduct occurred.  *Semiconductor*, 204 F.3d at

1373; *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir.

1997); *see Monsanto*, 363 F.3d at 1239 ("Once the challenger has shown the requisite levels of

materiality and intent, the district court must balance the equities to determine whether the

patentee has committed inequitable conduct that warrants holding the patent unenforceable.").

"The more material the omission, the less evidence of intent will be required in order to find that

inequitable conduct has occurred."  *Baxter*, 149 F.3d at 1327; *accord Critikon*, 120 F.3d at 1256.

"In light of all the circumstances, the court then must determine whether the applicant's conduct

is so culpable that the patent should be held unenforceable."  *Baxter*, 149 F.3d at 1327; *accord*

*Semiconductor*, 204 F.3d at 1373 (noting that determination is an "equitable judgment").

37 C.F.R. § 1.555(b) defines materiality as follows:

> [I]nformation is material to patentability in a reexamination proceeding when it is not cumulative to information of record or being made of record in the reexamination proceeding, and
>
> (1) It is a patent or printed publication that establishes, by itself or in combination with other patents or printed publications, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>
> > (i) Opposing an argument of unpatentability relied on by the Office, or
> >
> > (ii) Asserting an argument of patentability.
>
> A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

"A withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references." *Semiconductor*, 204 F.3d at 1374.

Direct evidence of intent is rarely available in instances of inequitable conduct, but intent may be inferred from clear and convincing evidence of the surrounding circumstances. *Baxter*, 149 F.3d at 1329; *Critikon*, 120 F.3d at 1256; *see Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995) (stating that intent "is most often proven by a showing of acts, the natural consequence of which are presumably intended by the actor"). "[A]lthough intent may be inferred from circumstantial evidence, mere gross negligence is insufficient to justify an

inference of an intent to deceive the PTO." *Baxter*, 149 F.3d at 1329; *accord Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc in relevant part)). "In a case involving an omission of a material reference to the PTO, there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference." *Baxter*, 149 F.3d at 1329.

While intent sometimes may be inferred from misleading conduct itself, *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993), the Federal Circuit has noted that "materiality does not presume intent, which is a separate and essential component of inequitable conduct." *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988). Proof of high materiality and that the applicant knew or should have known of that materiality, however, can make it difficult for an applicant to overcome an inference of intent to mislead:

> No single factor or combination of factors can be said always to require an inference of intent to mislead; yet a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish "subjective good faith" sufficient to prevent the drawing of an inference of intent to mislead. A mere denial of intent to mislead (which would defeat every effort to establish inequitable conduct) will not suffice in such circumstances.

*Critikon*, 120 F.3d at 1257; *see Semiconductor*, 204 F.3d at 1375.

### b. Hedlund's Deposition Testimony

Defendant asserts that Plaintiff, pursuant to C.F.R. § 1.555(b)(2)(i), had a duty to disclose Hedlund's deposition testimony during his reexamination proceeding because that information is material. In her deposition testimony, Hedlund described the cat declaw procedure she has

24

taught her students since 1981.  When asked to explain one of the diagrams in Chapter 6 of the

Fossum reference, she responded as follows:

> "Q:     Okay.  Could you turn to the figure on page 147, 13-37, looks like B?  Do you
>         have that in front of you?
>
> A:     Yes.
>
> Q:     Can you explain why the scalpel is shown at the joint in that figure?
>
> A:     Because this is demonstrating as you begin to cut through the tendons that attach
>         to P3.
>
> Q:     So this figure is after the first circumferential incision has already been made?
>
> A:     Yes, it is.
>
> Q:     And has the skin already been pulled back at that point?
>
> A:     Correct."

On cross-examination by Plaintiff's counsel, Hedlund clarified her description of the diagram:

> "Q:     I see.  Then if we look at figure 13-37B that's referred to in that sentence that I
>         directed you to a moment ago, that's of Hedlund Exhibit #2, does that illustration
>         show that [circumferential, cuticle] incision you just described?
>
> A:     No.  It's not really showing the cuticle incision, it's showing - it's referring to the
>         anatomy there and the dotted line is showing where you go through the joint
>         space after you've made your cuticle-like incision."

Defendant alleges that Plaintiff did not disclose Hedlund's deposition transcripts because he

knew it would undermine his efforts to obtain a favorable result during the reexamination

proceedings.  According to Defendant, Hedlund's deposition testimony is material to the

reexamination, and Plaintiff's attempt to withhold its disclosure constitutes inequitable conduct

before the PTO.

Plaintiff counters that he was not obligated to submit the deposition testimony because,

under the PTO rules that govern reexaminations, Plaintiff was only obligated to disclose "other

patents or printed publications."  Plaintiff argues that he complied with such rules, namely by

submitting the Fossum reference, but that it was not necessary to disclose Hedlund's deposition

testimony because it merely reflected her opinion of what the Fossum reference teaches.

Plaintiff's understanding of what is material during reexamination proceedings is mistaken.  Section 1.555(b)(2)(i) expressly provides that information is material to a reexamination proceeding when "[i]t refutes, or is inconsistent with, a position the patent owner takes in opposing an argument of unpatentability relied on by the Office."  37 C.F.R. § 1.555(b)(2)(i).  Hedlund's deposition testimony falls squarely within this category because her explanation for the diagram refutes Plaintiff's position that the Fossum reference teaches a different incision than the incision in Claims 1 and 2 of the '579 patent.  Therefore, the Hedlund deposition testimony is material to the reexamination proceedings.

### c.  Plaintiff's Statements Within Reexamination Argument

Defendant also contends that Plaintiff made false written statements in the argument he submitted during reexamination proceedings.  These statements, according to Defendant, are inconsistent with the above-referenced Hedlund deposition testimony.  Specifically, Defendant noted the following three allegedly false statements in Plaintiff's argument:

- "The only reference in Fossum to this illustration is at the end of the quoted sentence that discusses the first incision through the <u>skin</u>, not through tendons and ligaments.  Thus, the only reasonable interpretation of this illustration and the reference to it when discussing the first incision is that it shows the location of the first incision: through the skin.  Fossum teaches a skin incision at the joint between PII and PIII <u>not</u> near the edge of the ungual crest." (emphasis in Plaintiff's argument).

- "The prior art <u>only</u> teaches to cut through the joint in a single straight cutting path." (emphasis in Plaintiff's argument).

- "The Fossum reference also teaches a single cutting path incision starting with the

skin at the PII-PIII joint."

Defendant argues that all three statements are inconsistent with Hedlund's deposition testimony and could not have been made to the Examiner if Plaintiff had submitted such testimony. Defendant alleges that when Plaintiff made these statements without disclosing Hedlund's deposition testimony, he intentionally misled the Examiner and committed inequitable conduct before the PTO.

Plaintiff responds to Defendant's allegation by asserting that his statements merely reflect his subjective interpretation of what the Fossum reference teaches. According to Plaintiff, they are not affirmative misrepresentations of fact simply because they contradict Hedlund's deposition testimony of what she thinks the Fossum reference teaches. Plaintiff maintains that the law governing reexaminations permits him to submit his opinion of what the Fossum reference teaches without submitting an opposing view.

The Court is more persuaded by Defendant's position. Plaintiff's statements to the PTO are misleading in light of Hedlund's deposition testimony, which Plaintiff should have submitted to the Examiner. *See Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1357–62 (Fed. Cir. 2005); *Pharmacia Corp. v. Par Pharmaceutical, Inc.*, 417 F.3d 1369, 1373 (Fed. Cir. 2005) (affirming district court's ruling of inequitable conduct when applicant submitted scientific conclusions that were inconsistent with withheld information). And, contrary to Plaintiff's suggestion, Hedlund's deposition testimony is not merely an opinion that contradicts Plaintiff's argument; Hedlund is the author of the chapter in the Fossum reference that Plaintiff concedes is a prior art. Plaintiff's written statements to the Examiner flatly reject the content of Hedlund's deposition testimony. Without question, Plaintiff's statements are affirmative misstatements of material fact.

27

Given the highly material nature of Plaintiff's misleading statements and his failure to disclose Hedlund's deposition testimony, which the Court finds to be material information, this Court may properly infer an intent to deceive.  *See Baxter*, 149 F.3d at 1327 ("The more material the omission, the less evidence of intent will be required in order to find that inequitable conduct has occurred.").  Since Defendant has demonstrated by clear and convincing evidence both that the information was material and that the conduct was intended to deceive, the Court finds that Plaintiff did engage in inequitable conduct before the PTO, and as such, the '579 patent is unenforceable in its entirety.  *See Pharmacia*, 417 F.3d at 1374–75 ("[A] finding of inequitable conduct in the acquisition of even a single claim of a patent renders the remaining claims of that patent unenforceable, even those without the taint of inequitable conduct.").  Therefore, Defendant's Second Motion is **GRANTED**.

## V.  CONCLUSION

For the foregoing reasons, Defendant's First Motion (Motion for Summary Judgment on Plaintiff's Induced Infringement Claim) is **GRANTED**, and Defendant's Second Motion (Motion for Summary Judgment of Patent Unenforceability Due to Inequitable Conduct) is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Algenon L. Marbley
**ALGENON L. MARBLEY, JUDGE**
**United States District Court**

**DATED:  March 28, 2006**